UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Irvin E. Schermer and<br>Barbara A. Schermer<br><br>       Plaintiffs,<br><br>v.<br><br>BCBSM, Inc., d/b/a Blue Cross Blue Shield of<br>Minnesota<br><br>       Defendant. | Civil No. 08-878 (JRT/FLN)<br><br>**REPORT AND<br>RECOMMENDATION** |

Daniel W. Schermer for Plaintiffs.
Joel A. Mintzer and Amy E. Slusser for Defendants.

___

**THIS MATTER** came before the undersigned United States Magistrate Judge on July 25, 2008 on Defendant's Motion to Dismiss Plaintiffs' Amended Complaint [#10]. The matter was referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For the reasons which follow, this Court recommends Defendant's Motion be **GRANTED**.

**I.     ASSUMED FACTS**

The Plaintiffs, Irvin E. Schermer ("Irvin") and Barbara A. Schermer ("Barbara") are 90 and 88 years old respectively and reside in Jerusalem, Israel. (Compl. at ¶ 3.) Irvin is a retired employee of the law firm Borkon, Ramstead, Mariani, Fishman and Carp, Ltd. ("Borkon Ramstead") which is located in Minneapolis, Minnesota. (*Id.*) At all times relevant to the Complaint, Irvin and Barbara had Blue Cross Blue Shield Health Insurance under a group policy which covered current and retired employees of Borkon Ramstead (the "Plan"). (Compl. at ¶ 5.)

In their Complaint, Plaintiffs alleged that Barbara suffers from a number of health problems

including ischemic heart disease, myocardial infarction, atrial fibrillation, dementia, depression, hypothyroidism, renal failure and anemia. (Compl. at ¶ 15.) They alleged that after Barbara suffered a fall, while she was still in the hospital, it was determined that she would need 24-hour supervision at home to insure that she would not fall again and to assist her in washing and dressing. (Compl. at ¶ 9, 15-17.) Plaintiffs alleged that they contacted Defendant to determine whether they needed to seek pre-approval before securing such care and Defendants said pre-approval was not required. (Compl. at ¶ 9.) Plaintiffs alleged that on or about March 9, 2007 they mailed a claim to Defendants to cover the cost of the home care. (Compl. at ¶ 10.) Plaintiffs alleged that they sent an "updated" claim to Defendant on July 25, 2007 after being told by Defendant that it never received the March 9, 2007 claim. (Compl. at ¶ 13.)

On September 5, 2007, Plaintiffs were notified that their claim was denied. (Compl. at ¶ 10.) Plaintiffs alleged that Defendant's basis for denial was that the service was "not medically necessary as determined by a physician reviewer." (Compl. at ¶ 19.) Plaintiffs allege that on October 1, 2007 they requested the reviewing physician's report and any other documentation supporting the denial and received no response from Defendant. (Compl. at ¶ 21, Ex. B.) They claim that they sent another letter around October 24, 2007 complaining that the first letter had been ignored. (Compl. at ¶ 22.)

Plaintiffs allege that shortly after they sent the October 1, 2007 letter, a representative of the Defendant called them and indicated that if Plaintiffs wanted to appeal the denial of coverage, they were required to submit any additional information within thirty days of the date of the appeal. (Compl. at ¶ 23.) Plaintiffs allege that they told the representative they needed the physician's report and supporting documentation before they could lodge an appeal. (*Id*.) The representative allegedly

told Plaintiffs that Defendant would send the requested information. (*Id*.) On or about November 13, 2007, Plaintiffs allege they sent another letter complaining they had not received the promised documentation. (Compl. at ¶ 24.) Included with this letter, Plaintiffs submitted a report from one of Barbara's doctors stating that Barbara was totally disabled and in need of 24-hour assistance from caregivers. (Compl. at ¶ 24, Ex. D.)

Plaintiffs allege that on November 19, 2007, Barbara received a letter from Defendant stating it had received the letter requesting the physician's report and any other documentation supporting the denial. (Compl. at ¶ 25.) Plaintiffs allege that rather than providing Barbara with the requested documentation, Defendant simply stated in the letter that the reviewing physician noted that skilled care was not medically necessary. (*Id*.)

Plaintiffs allege that on November 28, 2007, they sent a letter requesting that the Defendant provide the name of the reviewer, the state where he or she was licensed and the date the review occurred. (Compl. at ¶ 26.)

Plaintiffs allege that on December 13, 2007, their representative received a letter from Defendant indicating Defendant was treating the November 13, 2007 letter as a request for an appeal. Plaintiffs allege they received a letter from Defendant on February 15, 2008 indicating that Dr. Mark Johnson had been the reviewing doctor on Barbara's case. (Compl. at ¶ 29.)

In a letter dated March 12, 2008, Defendant granted in part and denied in part Plaintiffs' appeal. (Compl. at Ex. F.) The Defendant determined that it would cover one skilled nursing visit per week. It denied coverage for services provided by a home health aid because that type of care was considered "custodial care" which was not covered under the Plan. (Compl. at Ex. F.) The letter quoted the Plan's definition of "custodial care" and "skilled care." (*Id*.)

3

The Plan defines "custodial care" as: [s]ervices to assist in activities of daily living, such as giving medicine that can usually be taken without help, preparing special foods, helping someone walk, get in and out of bed, dress, eat, bathe and use the toilet.  These services do not seek to cure, are performed regularly as part of a routine or schedule, and do not need to be provided directly or indirectly by a health care professional." (Decl. of Amy E. Slusser, Ex. 1 at 86.)

"Skilled care," on the other hand, is defined as: "[s]ervices that are medically necessary and must be approved by licensed registered nurses or other eligible providers.  A service performed by, or under direct supervision of, a licensed registered nurse or other eligible provider is not considered skilled care if the service can be safely and effectively self-administered or performed by a lay person." (Slusser Decl., Ex. 1 at 92.)

Page 25 of the Plan addresses coverage for "Home Health Care." (Slusser Decl., Ex. 1 at 25.)  This section is divided into three subsections, one of which addresses what the plan covers, one of which is titled "NOTES," and a final section titled "NOT COVERED." (*Id*.)  The final section lists the following services as "not covered": custodial or nonskilled care and services of a nonmedical nature. (*Id*.)

In Count One, Plaintiffs seek reformation of the insurance contract, claiming the provision in the insurance contract which states Defendant has discretionary authority to determine eligibility for benefits (Slusser Decl., Ex. 1 at 75.) violates ERISA and Minn. Stat. §§ 62A.03-62A.04.  In Count Two, Plaintiffs seek recovery of past and future benefits to which Barbara is allegedly entitled.  Count Three is a claim for breach of fiduciary responsibility and Count Four is a claim for "Failure to Furnish Information."

**II.     STANDARD OF REVIEW**

Defendant moves to dismiss the Complaint for failure to state a claim upon which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). In analyzing the adequacy of a complaint under Rule 12(b)(6), the Court must construe the complaint liberally and afford the plaintiff all reasonable inferences to be drawn from those facts. *See Turner v. Holbrook*, 278 F.3d 754, 757 (8th Cir. 2002). For the purpose of a motion to dismiss, facts in the complaint are assumed to be true. *In re Navarre Corp. Sec. Litig.*, 299 F.3d 735, 738 (8th Cir. 2002).

Nevertheless, dismissal under Rule 12(b)(6) serves to eliminate actions which are fatally flawed in their legal premises and certain to fail, thereby sparing litigants the burden of unnecessary pretrial and trial activity. *Neitzke v. Williams*, 490 U.S. 319, 326-327 (1989). To avoid dismissal, a complaint must allege facts sufficient to state a claim as a matter of law and not merely legal conclusions. *Springdale Educ. Ass'n v. Springdale Sch. Dist.*, 133 F.3d 649, 651 (8th Cir.1998). A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1965 (2007).

Ordinarily, the court does not consider materials outside the pleadings on a motion to dismiss. Indeed, when the parties submit materials outside the pleadings and the court does not exclude them, the court generally treats the motion to dismiss as one for summary judgment. *See* Fed. R. Civ. P. 12(d). Nevertheless, in a motion to dismiss, the court may consider materials outside the pleadings that are necessarily embraced by the pleading without converting the motion into one for summary judgment. *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999). In this case, the parties dispute whether the Plan covers certain care and therefore the Complaint

necessarily embraces the health care contract itself. Therefore the Court treats this motion as a motion to dismiss and will consider the contract in addition to the pleadings in making its determination.

### III.  LEGAL ANALYSIS

#### A.  Plaintiffs' Claim for Recovery of Past and Future Benefits Must be Dismissed (Count 2).

Plaintiffs seek coverage of the past and future cost of employing an aide to assist Barbara in walking, washing and dressing. ERISA provides a plan beneficiary with the right to judicial review of a benefits determination. 29 U.S.C. § 1132(a)(1)(B). Where a plan gives the administrator "discretionary authority to determine eligibility for benefits," we review the administrator's decision for an abuse of discretion. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). A party may, however, seek review under a less deferential standard provided she can present evidence demonstrating that "(1) a palpable conflict of interest or serious procedural irregularity existed, which (2) caused a serious breach of the plan administrator's fiduciary duty to her." *Woo v. Deluxe Corp.*, 144 F.3d 1157, 1160 (8th Cir. 1998). Here, Plaintiffs have sought review under a more deferential standard. However, under either an abuse of discretion standard or the least deferential review, a *de novo* standard, the Court's decision is the same. Based on the clear language of the policy, Plaintiffs are not entitled to past and future benefits.

Plaintiffs allege in the Complaint that they are seeking coverage for the cost of employing an aide to assist Barbara in washing and dressing and to supervise her twenty-four hours a day to insure that she will not fall and injure herself. (Compl. at ¶ 9, 15-17.) The Plaintiffs' Plan does not, however, cover such care. The "Home Health Care" section of the Plan explicitly states that it does not cover "custodial or nonskilled care." (Slusser Decl., Ex. 1 at 25.)

The Plan defines "custodial care" as: [s]ervices to assist in activities of daily living, such as giving medicine that can usually be taken without help, preparing special foods, helping someone walk, get in and out of bed, dress, eat, bathe and use the toilet. These services do not seek to cure, are performed regularly as part of a routine or schedule, and do not need to be provided directly or indirectly by a health care professional." (Decl. of Amy E. Slusser at Ex. 1 at page 86.)  All of the services for which Plaintiffs seek coverage - help dressing, bathing and walking - are listed in the Plan's definition of custodial care.  Plaintiffs' claim must be dismissed.

> **B. Plaintiffs' Claim for Reformation of the Insurance Contract (Count 1) Must be Dismissed.**

Plaintiffs claim that the contract should be reformed by striking the discretionary authority provision from the contract. The Court addresses this reformation claim to the extent it seeks relief under 29 U.S.C. § 1132(a)(3)(B), the provision which allows claimants to pursue "appropriate equitable relief" under ERISA. To the extent the reformation claim is intended to be a state law claim, it is pre-empted by ERISA because it duplicates the reformation claim under § 1132(a)(3)(B). *Aetna Health, Inc. v. Davila*, 542 U.S. 200, 209 (2004) ("[A]ny state-law cause of action that duplicates, supplements or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make ERISA remedy exclusive and is therefore pre-empted.")

Assuming but without deciding that reformation of the contract would be an appropriate remedy in this case, Plaintiffs' claim must nevertheless be dismissed.

Plaintiffs' first argument is that the discretionary authority clause is invalid because it does not comply with Minnesota Statute § 62A.04. Section 62A.04 sets forth mandatory provisions that must be included verbatim in health insurance plans. The provision at issue here is the integration

7

clause.[1]  The statute also provides that these mandatory provisions may be substituted by corresponding provisions with different wording that are approved by Minnesota's Commissioner of Commerce (the "Commissioner") which "are in each instance not less favorable in any respect to the insured or the beneficiary" than the mandatory provision.  Minn. Stat. § 62A.04, Subd. 2.  In this case, Defendant drafted its own integration clause and it was approved by the Commissioner. (Def. Reply at 7.)

The Plaintiffs contend that the integration clause in the Plan, which gives the Defendant discretionary authority to determine claimants' eligibility for benefits, violates the statute because it is less favorable to the insured than the language provided in the statute.  The provision from the statute requires that "[n]o agent has the authority to change this policy or waive any of its provisions."  Plaintiffs' contend that the integration clause in the Plan is less favorable because it gives the Defendant discretionary authority to determine eligibility for benefits and to construe the terms of the contract.  (Slusser Decl., Ex. 1 at 75.)

The language in the Plan is no less favorable than the standard provision from the statute. The Plan's integration clause does not give agents the authority to change the policy or waive any of its provisions; the clause rather gives Blue Cross discretionary authority to interpret the Plan. Further, the Commissioner approved the Plan's integration clause conferring discretionary authority

---

[1] The mandatory integration clause from Minn. Stat.§ 62A.04. is as follows :

ENTIRE CONTRCT; CHANGES: This policy, including the endorsements and
the attached papers, if any, constitutes the entire contract of insurance.  No change
in this policy shall be valid until approved by an executive officer of the insurer
and unless such approval be endorsed hereon or attached hereto.  No agent has the
authority to change this policy or to waive any of its provisions.

on the Defendant and such authority is explicitly contemplated and regulated by ERISA. *See, e.g.*, 29 U.S.C. § 1002(21)(A)(B)(iii) ("a person is a fiduciary with respect to a plan to the extent . . . he has any discretionary authority or discretionary responsibility in the administration of such plan."). Finally, in *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989), the United States Supreme Court addressed the appropriate standard of review for denials of benefits in plans which give discretionary authority to the plan fiduciaries. In that decision, the Supreme Court did not even question the validity of discretionary authority conferred upon plan fiduciaries.

The Plaintiffs cite *Watson v. United Svcs Auto. Assoc.*, 566 N.W.2d 683, 692 (Minn. 1997) for the proposition that even a plan approved by the Commissioner of Commerce may be found invalid if it is contrary to legislative intent. *Watson* involved an entirely separate statute which required fire insurance policies to contain specific provisions. *Id*. at 684-85. Here, Plaintiffs cite no authority for their contention that the Plan language is contrary to legislative intent. To the contrary, ERISA explicitly contemplates and regulates plans in which fiduciaries have discretionary authority to interpret the plan.

Plaintiffs next argue that the discretionary authority clause is invalid because it violates Minn. Stat. § 62A.03(6), which requires that "exceptions or reductions in indemnity" be designated under an appropriate caption such as "EXCEPTIONS" or "EXCEPTIONS AND REDUCTIONS."
[2] Plaintiffs claim that the discretionary authority provision was a reduction of indemnity and should

---

[2] Minn. Stat. § 62A.03(6) provides:
Exceptions in policy. The exceptions and reductions of indemnity are set forth in the policy and, except those which are set forth in section 62A.04, printed, at the insurer's option, either with the benefit provision to which they apply, or under an appropriate caption such as "EXCEPTIONS" or "EXCEPTIONS AND REDUCTIONS." However, if an exception or reduction specifically applies only to a particular benefit of the policy, a statement of the exception or reduction must

9

have been identified in the Plan as an exception. Plaintiffs claim that instead of being marked conspicuously, the provision was "buried" on page 75 of the 93 page Plan. The Court rejects the Plaintiffs' claim that the discretionary authority provision is a reduction of indemnity; the provision merely gives the Defendant, the fiduciary of the Plan, the power to interpret the Plan. The provision is not "buried" in the Plan. It is located in the "General Provisions" section, an appropriate location for an integration clause.

Plaintiffs also contend that the discretionary clause provision violates 29 U.S.C. § 1022 because it is not written in a manner understood by the average participant in that it did not clearly inform Plan members that Blue Cross retained discretionary authority to interpret the Plan. Contrary to Plaintiffs' argument, the Defendant did clearly inform members in the General Provisions section of the Plan that it retained discretionary authority to interpret the plan. (Slusser Decl., Ex. 1 at 75.)

Finally, Plaintiffs contend that the discretionary provision in the Plan is ambiguous because it is unclear whether the use of "we" in the provision refers to Blue Cross, the plan administrator or both entities. On page one of the contract, "we" is defined as Blue Cross, thereby clarifying any ambiguity. In sum, Plaintiffs have made no viable arguments justifying reformation of the contract and therefore their claim must be dismissed.

### C. Plaintiffs' Claim for Breach of Fiduciary Duty must be Dismissed (Count Three).

Plaintiffs allege that Defendant breached its fiduciary duty by doing a number of things that "discourag[ed] and prevent[ed] Plaintiffs and other elderly retirees from presenting legitimate claims for services covered by the policy." (Compl. at ¶ 61.) As a result of Defendant's alleged actions,

---

be included with the benefit provision to which it applies. Minn. Stat. § 62A.03(6).

Plaintiffs seek damages for loss of past and future health care benefits and past and future mental anguish.

Plaintiffs' claim must be dismissed because Defendant's alleged breach of fiduciary duty is not the proximate cause of Plaintiffs' alleged damages. Here, as the Court has explained in Section A of this Report and Recommendation, Defendant correctly concluded that Barbara's custodial care was not covered under the Plan. The failure of the Plan itself to cover custodial care is the proximate cause of Plaintiffs' injuries, not any alleged breach of fiduciary duty by the Defendant. *See Aetna*, 542 U.S. at 213 ("[I]f a managed care entity correctly concluded that, under the terms of the relevant plan, a particular treatment was not covered, the managed care entity's denial of coverage would not be a proximate cause of any injuries arising from the denial. Rather, the failure of the plan itself to cover the requested treatment would be the proximate cause.") Plaintiffs' claim must be dismissed.

### D. Plaintiffs' Claim for Failure to Furnish Information (Count Four) Must be Dismissed.

Plaintiffs claim that Defendant has "failed and refused to supply requested information referable to Plaintiffs' claims that it was required to supply." (Compl. at ¶ 67.) Plaintiffs claim that the Defendant failed to furnish the contact information of the doctor who evaluated Barbara's claim and also failed to furnish the doctor's written report on the case. (Compl. at ¶ 30.) Plaintiffs claim that, as a result, they are entitled to damages of $100 per day, presumably under 29 U.S.C. § 1132 (c). Plaintiffs also claim that Defendant has violated a number of ERISA regulations pertaining to claims procedure. (Compl. at ¶ 34.)

In Plaintiffs' Response to Defendant's Motion to Dismiss, they concede that liability under 29 U.S.C. § 1132(c) cannot be predicated upon regulatory violations.

Plaintiffs contend in their Response that Defendant is liable under 29 U.S.C. § 1133, which requires employee benefit plans to provide adequate notice to a participant or beneficiary as to why a claim was denied and must set forth specific reasons for the denial.[3]

The Eighth Circuit has interpreted the notice requirements of 29 U.S.C. § 1133 as obligating plan administrators "to set out in opinion form the rationale supporting [the decision to deny benefits] so [claimants] could adequately prepare for any further administrative review, as well as an appeal to the federal courts." *Richardson v. Central States, S.E. & S.W. Areas Pension Fund,* 645 F.2d 660, 665 (8th Cir.1981). Plan administrators satisfy this requirement even if initial letters sent to claimants do not satisfy the standard but later letters do. *Davidson v. Prudential Ins. Co. of Am.*, 953 F.2d 1093, 1096 (8th Cir. 1992) ("Although the initial denial letters [plaintiff] received were cursory in nature and alone would not satisfy *Richardson*, the final two letters [defendant] sent contained detailed explanations of [defendant's] decision to deny [plaintiff] . . . benefits.")

Defendant eventually provided adequate notice in this case. The initial notice, sent on or about September 5, 2007, stated that "this service is not medically necessary as determined by a physician reviewer." (Compl. at ¶ 19.) To be sure, this explanation was somewhat unclear and sent the Plaintiffs scrambling to seek documentation attempting to establish that the home care was "medically necessary" as defined by the Plan. Six months later, on March 12, 2008, the Defendant

---

[3] 29 U.S.C. § 1133 provides:
In accordance with regulations of the Secretary, every employee benefit plan shall - - (1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and (2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

12

sent a more detailed letter describing why Barbara's claims had been denied. (*See* Compl. at Ex. F.) The letter explained that claims for the Home Health Aide were denied because the care was considered "custodial care" under the Plan and is not covered. The letter then quotes the definition of both "skilled care" and "custodial care" from the Plan. "Skilled care" is defined, in part, as that which is "medically necessary." Even though the first letter was inadequate, the second one clearly stated why the care was not covered. Finally, the Court notes that the Plan itself clearly delineates what kinds of home health care are not covered. The "Home Health Care" section of the Plan includes "custodial or nonskilled care" in a short list of services that are "NOT COVERED" by the Plan. (Slusser Decl., Ex. 1 at 25.) Plaintiffs claim must be dismissed.

## IV.   RECOMMENDATION

Based upon all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that Defendant's Motion to Dismiss Plaintiffs' Amended Complaint [#10] be **GRANTED**.

DATED: October 14, 2008              s/ *Franklin L. Noel*
                                     FRANKLIN L. NOEL
                                     United States Magistrate Judge


Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before **October 31, 2008**, written objections which specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within ten days after service thereof. All briefs filed under the rules shall be limited to 3,500 words. A judge shall make a de novo determination of those portions to which objection is made.

Unless the parties are prepared to stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and cause to be filed by **October 31, 2008,** a complete transcript of the hearing.

This Report and Recommendation does not constitute an order or judgment of the District Court,

and it is, therefore, not appealable to the Circuit Court of Appeals.