UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

---

| | |
|---|---|
| IRVIN E. SCHERMER and<br>BARBARA A. SCHERMER,<br><br>　　　　　　　　　　　Plaintiffs,<br>v.<br><br>BCBSM, INC. d/b/a Blue Cross Blue<br>Shield of Minnesota,<br><br>　　　　　　　　　　　Defendant. | Civil No. 08-878 (JRT/FLN)<br><br>**ORDER ADOPTING REPORT AND<br>RECOMMENDATION OF THE<br>MAGISTRATE JUDGE** |

---

Irvin E. Schermer[1], 700 Lumber Exchange Building, 10 South Fifth Street, Minneapolis, MN 55402-1033, for *pro se*.

Daniel W. Schermer, **DANIEL W. SCHERMER, P.A.**, 700 Lumber Exchange Building, 10 South Fifth Street, Minneapolis, MN 55402-1033, for plaintiff Barbara Schermer.

Joel A. Mintzer and Amy E. Slusser, **ROBINS KAPLAN MILLER & CIRESI LLP**, 800 LaSalle Avenue, Suite 2800, Minneapolis, MN 55402-2015, for defendant

This case is before the Court on plaintiffs' Irvin E. Schermer and Barbara A. Schermer's (collectively, "plaintiffs") objections to a Report and Recommendation issued by United States Magistrate Judge Franklin L. Noel on October 14, 2008. The Magistrate Judge recommended granting defendant BCBSM, Inc.'s ("Blue Cross") motion to dismiss. After a *de novo* review of the objections to the Report and Recommendation,

---

[1] On January 15, 2009, Irvin E. Schermer filed a Notice of Appearance on behalf of himself as *pro se*. On March 3, 2009, Daniel W. Schermer withdrew as counsel to Irvin E. Schermer.

*see* 28 U.S.C. § 636(b)(1); Local Rule 72.2(b), the Court adopts the Report and Recommendation for the reasons given below.

## BACKGROUND[2]

Plaintiffs Irvin E. Schermer ("Irvin") and Barbara A. Schermer ("Barbara") are 90 and 88 years old, respectively, and reside in Jerusalem, Israel. (Am. Compl., Docket No. 3, ¶ 3.) Irvin is a retired employee of the law firm of Borkon, Ramstead, Mariani, Fishman and Carp, Ltd. ("Borkon, Ramstead"). (*Id.*) At all times relevant to the Amended Complaint, plaintiffs were insured under a group health insurance policy ("the Plan") issued by defendant Blue Cross, which covers current and retired employees of Borkon, Ramstead, as well as their dependents. (*Id.*, ¶ 5.)

Barbara suffers from various health problems, including "ischemic heart disease, myocardial infarction, atrial fibrillation, dementia, depression, hypothyroidism, renal failure, [and] anemia." (*Id.*, ¶ 15.) After sustaining serious injuries as a result of a fall on March 1, 2007, doctors informed plaintiffs that Barbara would require twenty-four-hour home health care after her release from the hospital. (*Id.* ¶ 9.) At all times relevant to this lawsuit, plaintiffs' insurance policy provided for home health care. (*Id.*, ¶ 7, Ex. A.) After contacting Blue Cross about this care, plaintiffs were instructed to send a claim form and documentation of the need for home health care to Blue Cross's offices in Minnesota. (*Id.* ¶ 9.)

---

[2] Facts pled in plaintiffs' complaint are assumed true. *Bhd. of Maint. of Way Employees v. Burlington N. Santa Fe R.R.*, 270 F.3d 637, 638 (8th Cir. 2001). Facts are recited only to the extent necessary to rule on plaintiffs' objections. A full recitation of the facts in this case can be found in the Magistrate Judge's Report and Recommendation.

On March 9, 2007, plaintiffs mailed the claim form and documentation to Blue Cross. (*Id.* ¶ 10.) After being informed that Blue Cross had not received the claim, plaintiffs submitted an "updated" claim on or about July 25, 2007. (*Id.*, ¶ 13.) With this claim form, plaintiffs submitted documentation from the Israeli Ministry of Health, Geriatric Division, stating that Barbara "needs a caretaker 24 hours a day." (*Id.*, ¶ 14.) Additional documentation provided with the updated claim included medical report notes from one of Barbara's treating physicians which stated that Barbara needed help, twenty-four hours a day, with "walking, bathing, getting around, getting into bed, [and] getting dressed." (*Id.*, ¶ 16.) The physician therefore recommended that Barbara "have someone living with her 24 hours a day." (*Id.*)

On or about September 5, 2007, plaintiffs were advised that their claim for home health care coverage was denied. (*Id.*, ¶ 19.) Plaintiffs were advised that the basis for the denial was that "this service is not medically necessary as determined by a physician reviewer." (*Id.*) Further, the notice of denial stated, "refer to the benefit chart and/or general exclusions in your plan documentation." (*Id.*) On October 7, 2007, plaintiffs' representative requested a copy of the reviewing physician's report and other documentation supporting the denial. (*Id.*, ¶ 21, Ex. B.)

Plaintiffs did not receive a response to this request after two attempts, and plaintiffs' representative wrote a third letter requesting the reviewing physician information on November 13, 2007. (*Id.*, ¶ 25.) Blue Cross thereafter sent a letter to Barbara on November 19, 2007, acknowledging the receipt of the request for a physician's report, but only repeating, "[t]he physician reviewer noted that skilled care is

not medically necessary." (*Id.*)  On November 28, plaintiffs' representative requested the name and state of license of the physician reviewer, and the date on which the review occurred. (*Id.*, ¶ 26).  On December 13, 2007, Blue Cross sent plaintiffs' representative a letter informing him that it was treating plaintiffs' November 19 letter as a request for an appeal. (*Id.*, ¶ 27.)  On December 28, 2007, plaintiffs provided an additional report from geriatric specialist Dr. Jeremy Jacobs, who stated that Barbara's "functional status is impaired, with dependence on full time help.  She requires full assistance in dressing, bathing; she is unable to walk unattended, with the need of full supervision and support.  She is incontinent of urine and has occasional loss of bowel control." (*Id.*, ¶ 28.)

"On or about March 12, 2008, [Blue Cross] denied the plaintiffs' appeal." (*Id.*, ¶ 31.)  Blue Cross again informed plaintiffs that the reason for the denial of benefits was that the services were "not medically necessary," although Blue Cross altered its previous denial slightly, allowing for one home health care visit per week. (*Id.*)

On March 27, 2008, plaintiffs filed this lawsuit, alleging breach of fiduciary responsibility and a failure to furnish information, seeking reformation of the insurance contract, and seeking to recover past and future benefits. (*Id.*, ¶¶ 50-68.)  On May 29, 2008, Blue Cross moved to dismiss the Amended Complaint, (Docket No. 10), and on October 14, 2008, the Magistrate Judge issued a Report and Recommendation recommending that this Court grant Blue Cross's motion as to all four counts. (Report and Recommendation, Docket No. 29.)  Plaintiffs filed objections to the Magistrate Judge's conclusions as to the reformation and benefits claims.  Those objections are addressed separately below.

**DISCUSSION**

**I.    STANDARD OF REVIEW**

In reviewing a complaint under a Rule 12(b)(6) motion to dismiss, the Court considers all facts alleged in the complaint as true, and construes the pleadings in a light most favorable to plaintiff, the non-moving party. *See, e.g., Bhd. of Maint. of Way Employees v. Burlington N. Santa Fe R.R.,* 270 F.3d 637, 638 (8th Cir. 2001). A motion to dismiss should not be granted unless it appears beyond a doubt that plaintiff can prove no set of facts that would entitle plaintiff to relief. *Coleman v. Watt,* 40 F.3d 255, 258 (8th Cir. 1994). However, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly,* 127 S. Ct. 1955, 1965 (2007). A plaintiff must state "a claim to relief that is plausible on its face." *Id.* at 1974.

In considering whether to dismiss actions for failure to state a claim, courts may consider materials that are necessarily embraced by the pleadings. *See Porous Media Corp. v. Pall Corp.,* 186 F.3d 1077, 1079 (8th Cir. 1999). In this case, the parties dispute whether the Plan covers certain home health care claims, and plaintiffs referred to the Plan throughout the complaint. Indeed, plaintiffs submitted as exhibits to the complaint the relevant portions of the Plan, (Docket No. 2), and defendants submitted the Plan in its entirety, (Slusser Decl., Docket No. 13). The Plan is therefore necessarily embraced by

the pleadings, and the Court considers the insurance contract in addressing plaintiffs' objections.[3]

## II. PAST OR FUTURE BENEFITS

The Employee Retirement Income Security Act ("ERISA") provides a plan beneficiary with the right to judicial review of a benefits determination. 29 U.S.C. § 1132(a)(1)(B). Where a plan gives an administrator "discretionary authority to determine eligibility for benefits," the Court reviews the administrator's decision for abuse of discretion. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 112 (1989). The Court applies a less deferential standard of review if a party presents evidence demonstrating that "(1) a palpable conflict of interest or serious procedural irregularity existed, which (2) caused a serious breach of the plan administrator's fiduciary duty to her." *Woo v. Deluxe Corp.*, 144 F.3d 1157, 1169 (8th Cir. 1998). The Magistrate Judge concluded that under either the highly deferential standard of review or a *de novo* standard of review, plaintiffs are not entitled to recover past and future benefits. (Report and Recommendation, Docket No. 29 at 6.)

---

[3] The Court is conscious of Eighth Circuit law that a motion to dismiss pursuant to Rule 12(b)(6) "must be treated as a motion for summary judgment when matters outside the pleadings are presented and not excluded by the trial court." *Gibb v. Scott*, 958 F.2d 814, 816 (8th Cir. 1992). "Matters outside the pleading" include "'any written or oral evidence in support of or in opposition to the pleading that provide some substantiation for and does not merely reiterate what is said in the pleadings.'" *Id.* at 816 (quoting 5C Wright & Miller, *Federal Practice and Procedure* § 1366). Here, however, the Court concludes that the Plan is necessarily embraced by the pleadings and considers no additional matters outside of the pleadings or the Plan for the purpose of deciding this motion. *Cf. id.* at 815 (questioning a district court's consideration of employment contracts in reviewing a motion to dismiss, even though the plaintiff's complaint made no mention of the written contracts).

## A.  "Medically Necessary" and Custodial Care

Plaintiffs object to the Magistrate Judge's conclusion that plaintiffs are not entitled to recover past and future benefits related to Barbara's home health care claims. Plaintiffs assert that "[t]he issue before the Court was essentially whether or not the services in question were medically necessary." (Pl.'s Objections, Docket No. 31 at 1 (emphasis omitted).) The Court disagrees with this characterization of the issue. Rather, the issue before the Court is whether the Blue Cross administrator appropriately denied plaintiffs' claims. Under either standard of review of the administrator's decision, plaintiffs are not entitled to recover past and future benefits.

Plaintiffs' core objection is that the Magistrate Judge "switched" from deciding whether plaintiffs' requested benefits were "medically necessary" to deciding whether the claimed benefits were "custodial services." (Pl.'s Objections, Docket No. 31 at 4.) The thrust of their argument is that "if the service charges were for medically necessary services, it goes without saying that the expenses were reimbursable." (*Id.* at 8.) Thus, by merely analyzing whether the services were custodial or nonskilled, plaintiffs contend that the Magistrate Judge improperly concluded that the Plan administrator's denial of benefits was proper. Plaintiffs' argument is unpersuasive.

On September 5, 2007, plaintiffs were advised that their benefits claim for home health care was denied on the basis that "this service is not medically necessary as determined by a physician reviewer." (Am. Compl., Docket No. 3, ¶ 19.) Plaintiffs further allege that the only other explanation given was that they should "refer to a benefit chart and/or general exclusions in [the] plan documentation." (*Id.*) Under the

home health care benefit chart provided as an exhibit to the complaint, the Plan covers "skilled care ordered in writing by a physician and provided by Medicare-approved or other preapproved home health agency employees." (Docket No. 2, Ex. A.). Under a subheading entitled "NOT COVERED," the benefit chart lists "custodial or nonskilled care" and refers the reader to the "General Exclusions," which states "[t]he Plan does not pay for . . . [c]harges for or related to care that is custodial or not normally provided as preventive care or treatment of an illness." (*Id.*, Ex. A; Slusser Decl., Ex. 1 at 49.) The insurance contract defines "custodial care" as

> [s]ervices to assist in activities of daily living, such as giving medicine that can usually be taken without help, preparing special foods, helping someone walk, get in and out of bed, dress, eat, bathe and use the toilet. These services do not seek to cure, are performed regularly as part of a routine or schedule, and do not need to be provided directly or indirectly by a health care professional."

(Slusser Decl., Ex. 1 at 86.)

Plaintiffs allege that they provided documentation to Blue Cross supporting Barbara's claims for home health care, which included a submission from the Israeli Ministry of Health, clinic notes, and a medical report from one of Barbara's treating physicians. The documentation is alleged to state:

> After three consecutive falls now needs a caretaker 24 hours a day. Most of [Barbara's] falls are at night.
>
> ADL – needs help washing, dressing, someone there at all times as she falls constantly. Latest fall resulted in broken neck [sic] femur.

> Her medical situation: the danger of repeated falls, depression and her dependency on ADL and walking, bathing, getting around, getting into bed, getting dressed: she needs help for all of these 24 hours a day .... I therefore recommend that she have someone living with her 24 hours a day.

(Am. Compl., Docket No. 3, ¶¶ 14-16.)

Plaintiffs also allege that after being informed by Blue Cross that their November 13, 2007, letter was being treated as a request for an appeal, plaintiffs submitted a report from an additional treating physician, Dr. Jeremy Jacobs, which stated, "[Barbara] requires full assistance in dressing, bathing; she is unable to walk unattended, with the need of full supervision and support. She is incontinent of urine and has occasional loss of bowel control." (*Id.*, ¶ 28.) Although not pled in the complaint, the Court notes that plaintiffs provide in their objections an excerpt from another report by Dr. Jacobs, which states substantially the same information as the reports alleged in the complaint:

> In my opinion, the services are medically necessary in order to maintain or improve as much as possible [Barbara's] frail physical and mental status. In addition to the basic needs of dressing and bathing and similar tasks, which are medically necessary to prevent pain and maintain her physical needs, the caretakers also maintain a regular program of both passive and active movements and exercise of her limbs in order to maintain the best range of movement, improve circulation and prevent disuse – a medical necessity in Barbara's case. Considering Barbara's confused mental state, I recommend that the caretakers continue, as they have, to handle the administration of drugs, the renewal of medical prescriptions, and bringing her to the hospital for outpatient blood transfusions.[4]

(Pl.'s Objections, Docket No. 31 at 3.)

---

[4] The excerpt from Dr. Jacobs's report, which plaintiffs obtained almost a month after the filing of the Amended Complaint, is included here in response to plaintiffs' objections. The report, however, is not necessarily embraced by the pleadings and is therefore excluded from consideration in reviewing the motion to dismiss. The Court also notes that the result would not change even if the Court considered Dr. Jacobs's report in ruling on this motion.

The medical reports, however, recommend services that are commensurate with the definition of custodial care under the Plan: constant supervision, assistance with bathing, dressing, getting into bed, administering drugs, renewing prescription medications, and transportation to the hospital. None of these services are designed to cure Barbara's ailments. Moreover, these activities are part of a daily routine, and assistance in completing the activities could be easily performed by a non-health-care professional. The Court thus finds that the Plan administrator properly concluded that plaintiffs are not entitled to recover past and future benefits.

### B. Lack of Administrative Record

Plaintiffs also argue that the Court is required to engage in an in-depth review of the administrative record to ascertain whether all relevant factors were considered by the Plan administrator in denying benefits. (Pl.'s Objections, Docket No. 31 at 6 (citing *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971).) Notably, plaintiffs cite *McCauley v. Federal Ins. Co.*, 500 F.3d 784 (8th Cir. 2007). In *McCauley*, plaintiffs brought an ERISA action against the plan administrator of an employee welfare benefit plan that had provided to a decedent two policies of insurance against accidental death. *Id.* at 786. The district court granted the defendant's motion to dismiss. The Eighth Circuit reversed, finding that the district court clearly considered "argument and evidence from some source outside the four corners of the complaint," and therefore should have considered the motion as a motion for summary judgment. *Id.* at 787-88. Further, the Eighth Circuit remanded the case in order for the district court to:

>  (1) properly analyze the motion as a request for summary judgment through application of the standards articulated in Rule 56 and (2) give the parties sufficient opportunity to create an acceptable record including the papers used by the plan administrator in its consideration and denial of the claims below. **Our requirement that the administrative record be included will not only assist the district court in making its summary judgment analysis, but will also allow the court to determine whether defendants' suggested bases for denial of the claims are simply post hoc rationalizations**, as plaintiffs contend.

*Id.* at 788 (emphasis added).

Here, the Court does not consider matters outside the four corners of the Amended Complaint, with the exception of the Plan, which is necessarily embraced by the Amended Complaint. That is, Blue Cross's motion to dismiss will "succeed or fail based upon the allegations contained in the face of the complaint." *Gibb v. Scott*, 958 F.2d 814, 816 (8th Cir. 1992). Assuming all facts pled in the Amended Complaint as true, however, plaintiffs fail to state a claim for benefits on which relief may be granted. It is clear that the medical reports alleged by plaintiffs recommend care such as twenty-four-hour-a-day caretaking and providing assistance with walking, bathing, dressing, getting in and out of bed, and other routine activities. (Am. Compl., Docket No. 3, ¶¶ 14-17.) It seems beyond question that such services are needed. It is also clear, however, from the plain language of the insurance contract that such benefits are not covered. Indeed, plaintiffs allege that they were provided this explanation in the September 5 notification denying their benefit claims. (*Id.*, ¶ 19.) There is therefore no risk that Blue Cross's suggested bases for the denial of claims are *post hoc* rationalizations. Moreover, plaintiffs do not allege that the administrative record will reveal any information suggesting that the Plan

administrator improperly denied the claim on the grounds that it sought coverage for custodial care.

In sum, plaintiffs fail to state a claim that is plausible on its face, and an exhaustive review of the administrative record is consequently unnecessary.[5] *See Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007). Based on the foregoing *de novo* review of plaintiffs' objections, the Court adopts the Report and Recommendation as to its conclusions that claims for past and future benefits must be dismissed.

### III. CLAIM FOR REFORMATION

Plaintiffs contend that Blue Cross violated ERISA "by failing to clearly inform the plan members that it had reserved unto itself the discretionary authority to deny benefits and to construe the policy." (Am. Compl., Docket No. 3, ¶¶ 49, 52.) As a result, plaintiffs seek to reform the insurance contract by striking the discretionary authority provision. (*Id.*, ¶ 52.) Under that provision, Blue Cross maintained that it had "discretionary authority to determine [a beneficiary's] eligibility for benefits and to construe the terms of this contract." (Docket No. 2, Ex. G.)

The Report and Recommendation first noted that plaintiffs' equitable reformation claim may be preempted by ERISA. (Report and Recommendation, Docket No. 29 at 7 (citing *Aetna Health, Inc. v. Davila*, 542 U.S. 200, 209 (2004) ("[A]ny state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy

---

[5] Plaintiffs also claim that the Magistrate Judge "makes the totally unfounded statement that, 'In a letter dated March 12, 2008, Defendant granted in part and denied in part Plaintiffs' appeal.'" (Pl.'s Objections, Docket No. 31 at 7.) Plaintiffs argue that the March 12 letter does not refer to an appellate decision. The language regarding the "appeal," however, was not coined by the Magistrate Judge. Rather, it was taken directly from plaintiffs' complaint: "On or about March 12, 2008, the defendant denied the plaintiffs' appeal." (Am. Compl., Docket No. 3, ¶ 31.)

conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted.")).) After declining to decide that reformation was preempted,[6] however, the Magistrate Judge concluded that Blue Cross's integration clause was valid and did not violate Minnesota law by providing less favorable terms to the insured under the Plan. (Report and Recommendation, Docket No. 29 at 7-10.)

Minnesota Statute § 62A.04 sets forth mandatory provisions that must be included in health insurance plans "in the words in which the same appear in [§ 62A.04]." Under that section, integration clauses must state as follows:

> ENTIRE CONTRACT; CHANGES: This policy, including the endorsements and the attached papers, if any, constitutes the entire contract of insurance. No change in this policy shall be valid until approved by an executive officer of the insurer and unless such approval be endorsed hereon or attached hereto. No agent has the authority to change this policy or to waive any of its provisions.

Minn. Stat. § 62A.04.

The statute also provides, however, that these mandatory provisions may be substituted by corresponding provisions with different wording as approved by Minnesota's Commissioner of Commerce if those provisions are "not less favorable in

---

[6] To the extent that plaintiffs seek reformation under Minnesota common law, that claim is likely preempted by ERISA. *See* 29 U.S.C. § 1144(a) ("[T]he provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title."); *see also Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 50 (1987) ("Certainly a common-sense understanding of the phrase "regulates insurance" does not support the argument that the Mississippi law of bad faith falls under the saving clause."); *Korman v. MAMSI Life & Health Ins. Co.*, 121 F. Supp. 2d 843, 845 (D. Md. 2000) ("Both parties agree that the contract reformation claim against MAMSI relates to an employee benefits plan and thus, is preempted by [ERISA]."). A law "relates to" an employee benefit plain if it has a connection with or reference to such a plan." *Hubbard v. Blue Cross and Blue Shield Ass'n*, 42 F.3d 942, 945 (5th Cri. 1995). Because the Court overrules plaintiffs' objection on other grounds, however, it need not conclusively resolve the preemption question.

any respect to the insured or the beneficiary." *Id.*, subd. 2. Blue Cross drafted its own integration clause, which states:

> This certificate, the "Benefit Summary" and the group contract issued to the group contract holder make up the entire contract of coverage. The master group contract is available for your inspection at the group contractholder's office. Your group contractholder is the Plan Administrator for your coverage plan. We have discretionary authority to determine your eligibility for benefits and to construe the provisions of the group contract and this certificate.

(Docket No. 2, Ex. G.)

Plaintiff now objects to the Magistrate Judge's statement that "Defendant drafted its own integration clause and it was approved by the Commissioner." (Pl.'s Objections, Docket No. 31 at 6 (quoting Report and Recommendation, Docket No. 29 at 8).) The Magistrate Judge's statement is unnecessary, however, to the ultimate conclusion regarding plaintiffs' claims.

The Blue Cross integration clause, while different from the provision outlined in the Minnesota statute, is no less favorable to the insured beneficiaries of the Plan. The statutory integration clause provides that "[n]o agent has the authority to change this policy or waive any of its provisions." Minn. Stat. § 62A.04. The Blue Cross integration clause does neither. Rather, it merely grants to the Plan administrator the discretionary authority to **interpret** the insurance contract. Indeed, ERISA provisions explicitly contemplate a Plan administrator's discretionary authority. *See, e.g.*, 29 U.S.C. § 1002(21)(A)(B)(iii) ("[A] person is a fiduciary with respect to a plan to the extent . . . he has discretionary authority or discretionary responsibility in the administration of such plan."); *see also Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)

(addressing the appropriate standard of review for denials of benefits in plans that give discretionary authority to plan fiduciaries).

Moreover, plaintiffs do not allege that § 62A.04 was violated by virtue of Blue Cross's failure to receive the Commissioner's approval for the substituted provision. Instead, plaintiffs allege that Blue Cross violated § 62A.04 because it "insert[ed] language into the policy less favorable to the insured than the language contained in Minn. Stat. 62A.04. . . . namely language conferring discretionary authority on itself to determine benefits and construe the policy." (Am. Compl., Docket No. 3, ¶¶ 45-46.)

In plaintiffs' brief opposing the motion to dismiss, plaintiffs had the opportunity to object to Blue Cross's assertion that the Commissioner approved the integration clause, but did not do so. Instead, plaintiffs marginalized the Commissioner-approval step in favor of arguing that the Plan's integration clause was invalid, regardless of approval:

> The defendant also claims that its violation of state law is excused under the filed rate doctrine **because the Commissioner has approved the policy**.[] However, this is not a filed rate case involving the Commissioner's discretion to approve insurance rates. Instead, it involves a mandatory provision of the insurance laws. As the Minnesota Supreme Court has stated, a provision of an insurance policy contrary to state law "cannot be permitted to stand **even if the Commissioner approved it**."

(Pl.'s Opp. Mem., Docket No. 16 at 10 (emphasis added).)

Finally, plaintiffs do not plead any fact that suggests that Blue Cross did not receive approval from the Commissioner to alter the integration clause. Even construing the pleadings liberally and in a light most favorable to plaintiffs, there is no indication that plaintiffs believe or intend to prove that the Blue Cross integration clause was not approved by the Commissioner. Accordingly, plaintiffs' objection is overruled.

Plaintiffs do not object to the Magistrate Judge's conclusions as to their fiduciary breach claims and claim for failure to furnish information. Given the above analysis, the Court adopts the Report and Recommendation of the Magistrate Judge. Further, the Court denies as moot Blue Cross's request to strike plaintiffs' objections and motion to strike plaintiffs' surreply.

### ORDER

Based on the foregoing records, files, and proceedings herein, the Court **OVERRULES** plaintiffs' objections [Docket No. 31] and **ADOPTS** the Report and Recommendation of the Magistrate Judge [Docket No. 29] is **ADOPTED**. **IT IS HEREBY ORDERED** that:

1. Defendant's Motion to Dismiss Plaintiffs' Amended Complaint [Docket No. 10] is **GRANTED**.

   **IT IS FURTHER HEREBY ORDERED** that:

2. Plaintiffs' Amended Complaint [Docket No. 3] is **DISMISSED with prejudice.**

3. Defendant's Motion to Strike Plaintiffs' Surreply [Docket No. 40] is **DENIED as moot**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: March 31, 2009  
at Minneapolis, Minnesota.

                                       s/ John R. Tunheim  
                                       JOHN R. TUNHEIM  
                                       United States District Judge